UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ILLINOIS

**In re:**

| | |
|---|---|
| **VILLA MARIE WINERY, LLC,** | Case No.  18-30163 |
| **VILLA MARIE VINEYARDS, INC.,** | Jointly Administered |
| **DROST ENTERPRISES, LLC,** | Under Chapter 11 |
| **JSD ENTERPRISES, LLC,** | |
| **JSD ENTERPRISES, LLC VINEYARD,** | |
| **JSD ENTERPRISES, LLC LAKEWOOD,** | |
| **JSD ENTERPRISES, LLC ZUPAN,** | |

**Debtors.**

OPINION

This matter is before the Court on a motion filed by First Mid-Illinois Bank & Trust, N.A. f/k/a First Clover Leaf Bank ("the Bank") to enforce a settlement agreement with the Debtors. The Bank is the Debtors' primary secured creditor. On the date of filing, the Debtors owed the Bank approximately $1,717,426.29, plus interest, fees and costs. The indebtedness to the Bank is secured by first priority liens and security interests in substantially all of the Debtors' assets, including accounts, inventory, equipment, improvements and proceeds thereof. The Bank also holds mortgages on certain real estate owned by the various Debtors.

The Bank alleges that on June 13, 2018, the Debtors and the Bank agreed to a full and final settlement of their disputes in this case. According to the Bank, the settlement terms are fully set forth in a Forbearance Agreement that was attached to an e-mail sent by David Antognoli, counsel for the Bank, to Thomas Riske, counsel for the Debtors, on June 13, 2018. It is the Bank's position that the Forbearance Agreement was confirmed and accepted by Mr. Riske in a subsequent e-mail, also dated June 13, 2018. The Bank correctly points out that Mr. Riske later informed this Court that the Debtors and the Bank had reached a settlement of all issues.

The Debtors dispute that there is a valid and enforceable settlement. They contend that the material terms of the proposed settlement are outlined in an earlier e-mail dated June 8, 2018 from Joel Kunin, co-counsel for the Bank, to Mr. Riske.[1]  None of those terms included an

---

[1] During the hearing, Ms. Wiemann and counsel for the Debtors referred to the "six points" set forth in the June 8, 2018 e-mail, although the e-mail contains a list of ten terms. This discrepancy was never explained.

1

agreement by the Debtors to release any and all claims against the Bank.  When the Debtors later received the Forbearance Agreement with the release language[2] included, Judy Wiemann, the Debtors' owner, refused to sign the Agreement.  The Bank then filed the instant motion to enforce settlement.

An evidentiary hearing on the Bank's motion was held on June 26, 2018.  The Court heard testimony from David Antognoli, Thomas Riske and Ms. Wiemann.  The e-mail from Mr. Kunin to Mr. Riske dated June 8, 2018 was admitted into evidence as Debtors' Exhibit A.  Another e-mail dated June 12, 2018 (discussed below), as well as the e-mails dated June 13, 2018 between Mr. Antognoli and Mr. Riske, were admitted into evidence as the Bank's Exhibits 1, 2 and 3.

Mr. Antognoli testified to the following:

- On June 12, 2018, he e-mailed a proposed, unsigned Forbearance Agreement to Mr. Riske for his review.   The Agreement included a provision requiring Debtors to release any and all claims against the Bank.  He asked Mr. Riske to reply with his comments.  See Bank's Exhibit 1.
- On June 13, 2018, Mr. Riske telephoned him to say he had reviewed the Agreement and that Ms. Wiemann did not agree with the release language.  Mr. Antognoli informed Mr. Riske that the release language was non-negotiable.  Mr. Riske replied that he would inform his client of the Bank's position.
- On June 13, 2018, Mr. Riske called him a second time to advise that he had consulted with his client and that the release language was acceptable.
- On June 13, 2018 at 3:34 p.m., he sent an e-mail to Mr. Riske with the proposed Forbearance Agreement attached.   The e-mail states in part that "Based on our conversation, it is my understanding that your clients have agreed to the terms of the Forbearance Agreement.  Please have it executed on behalf of the debtors and return a scanned copy via email.  Upon receipt, I will have the Agreement countersigned by the Bank and provide you with a fully executed copy."  See Bank's Exhibit 2.

---

[2] "Release language" refers to the provision in the proposed Forbearance Agreement that Debtors will release any and all claims against the Bank with respect to the indebtedness.

- On June 13, 2018 at 3:41 p.m., Mr. Riske sent a reply e-mail advising him that "Yes, I can confirm that the terms have been agreed to by the debtors and I have sent this final agreement to the debtors for signature." See Bank's Exhibit 3.

Mr. Riske also testified. When asked whether Mr. Antognoli's testimony was an accurate representation of the communication between them, he replied that it was. He further testified that:

- He first began negotiations with Mr. Kunin in May of 2018.
- It was his understanding that the purpose of the e-mail dated June 8, 2018 from Mr. Kunin was to confirm the material terms of a settlement between the Debtors and the Bank. There was no mention in the June 8th e-mail of the Bank seeking any release language.
- The first time that he saw the release language was when he received a copy of the Forbearance Agreement (presumably on June 12, 2018). He then conversed with his client regarding the release language.
- He believed that he had the requisite authority from his client to settle the case with the release language included, and further, that he had the authority to so advise the Bank.
- At some point after the e-mail exchanges with Mr. Antognoli, he called the Court to inform it that the case had settled.

Ms. Wiemann testified to the following:

- With certain "tweaks," she agreed to the terms of settlement set forth in the June 8, 2018 e-mail from Mr. Kunin to Mr. Riske, and authorized Debtors' counsel to propose a settlement to the Bank based on those terms.[3]
- She began performing the proposed settlement terms by making her first interest payment on June 8, 2018.
- She received the proposed Forbearance Agreement on June 13, 2018. It contained a provision not mentioned in previous settlement discussions or e-mails, i.e., the release

---

[3] Again, it is not clear how many "points" or terms Ms. Wiemann agreed to, but none of the terms addressed any type of release language.

3

language. She had not agreed to that language and did not understand it. Therefore, she contacted another attorney, Steve Wiggington, to review and explain the proposed language.[4] Once she understood the meaning of the language, she refused to sign the Agreement.

- She no longer agrees to any settlement with the Bank, not even to the terms of settlement set forth in the June 8, 2018 e-mail.

The formation, construction and enforcement of settlement agreements are governed by state contract law. *Magallanes v. Illinois Bell Telephone Co.*, 535 F.3d 582, 584 (7th Cir. 2008) (citations omitted). Under Illinois law, an attorney is not authorized to settle a client's claim absent the client's express authorization to do so. *Id*. Importantly, "[a]n attorney's authority to agree to an out-of-court settlement will not be presumed and the burden of proof rests on the party alleging authority to show that fact." *Id*. *See also Schmalz v. Village of North Riverside*, 2016 WL 6395586, at *3 (N.D.Ill. Oct. 28, 2016) (defendants' motion to enforce settlement denied on basis that defendants did not meet burden of proving that plaintiff's counsel had authority to accept settlement offer on plaintiff's behalf); *Condon and Cook, L.L.C. v. Mavrakis*, 69 N.E.3d 274, 285 (Ill.App.Ct. 2016) (client will not be bound by an attorney's out-of-court settlement without proof of the client's express authorization, and the party alleging authority has the burden of proving that fact).

In the instant case, the Bank did not meet its burden of proving that Ms. Wiemann expressly authorized her attorney to agree to the release language in the proposed Forbearance Agreement. In an e-mail dated June 13, 2018, Mr. Riske confirmed that "the terms have been agreed to by the debtors." See Bank's Exhibit 3. He also testified that he believed he had the requisite authority from his client to settle the case with the release language included. While the Court has no reason whatsoever to doubt the veracity of Mr. Riske's statements, those statements are not sufficient to prove that Ms. Wiemann expressly authorized him to settle the case with the release language included. Nor was there any other evidence or testimony proving her express

---

[4] It is unclear in what capacity Mr. Wiggington is advising Ms. Wiemann. Although he has been in attendance at hearings in this case, he has not entered his appearance nor has he participated in any of the hearings before this Court. The proposed Forbearance Agreement called for Ms. Wiemann to sign only as a member or officer of the Debtors. Based on her testimony, it appears that she would not sign the Agreement after consultation with Mr. Wiggington. If Mr. Wiggington is going to advise Ms. Wiemann as to corporate matters, he must be employed through the bankruptcy estates.

authorization. Absent such proof, the Court cannot enforce the Bank's proposed settlement agreement.

To "clean up" the record, the Court addresses one final issue. At the conclusion of the hearing, the Court directed counsel to file briefs on the question of whether the Illinois Credit Agreements Act or the Statute of Frauds barred enforcement of the alleged settlement agreement. Based on the Court's decision today that the Bank failed to prove Ms. Wiemann's express consent to the release language, it is unnecessary to address that question. Should it become necessary to revisit that issue later in the case, the Court will do so.

Accordingly, for the reasons stated, the Bank's motion to enforce settlement agreement is DENIED. The Court will issue a notice scheduling a final hearing on the Debtors' motion for authority to use cash collateral, as well as a notice scheduling the Bank's pending motions for relief from stay for trial.

See Order entered this date.

ENTERED: August 20, 2018

                                                /s/ Laura K. Grandy
                                       UNITED STATES BANKRUPTCY JUDGE